IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| ADAM HENKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-0371-CV-W-BP |
| | ) | |
| OFFICER DANIEL COLLINS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION (1) GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, (2) DISMISSING JOHN DOE DEFENDANTS, AND (3) DIRECTING PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING

This suit arises from an arrest of Plaintiff Adam Henke. Henke generally alleges that (1) the arresting officer, Daniel Collins, administered excessive force during the arrest, (2) three John Doe Defendants arrived on the scene and also administered excessive force during the arrest, and (3) three more John Doe Defendants administered excessive force at the police station. Henke has asserted constitutional and state tort claims against Officer Collins, the John Doe Defendants, and the Board of Police Commissioners (through its members). Pending is Officer Collins' and the Board's Motion for Summary Judgment. Officer Collins argues that he is entitled to qualified immunity with respect to the constitutional claims and sovereign immunity with respect to the state claims. The Board argues it is entitled to sovereign immunity with respect to the state claims, and that it cannot be liable on the constitutional claims because Officers Collins is not liable on the constitutional claims. For the reasons set forth below, (1) the motion is **GRANTED** in part and (2) the parties are directed to submit supplemental briefing.

# I. BACKGROUND

## A. Sources of Facts

Before setting forth the factual background, the Court must identify the sources of facts that it may utilize. The parties agree that many of the facts are uncontroverted. In some instances, part of a fact is agreed to and another part is disputed, in which case the Court deems the agreed-to portion as established. There are other facts that Plaintiff contends he cannot confirm or deny because he lacks the information to do so. In other instances, Plaintiff responds by merely confirming Defendants' assertion that a particular statement appears in a person's deposition or affidavit. The Court accepts these facts as true for purposes of the motion; a party is allowed to support a fact for summary judgment purposes by relying on an affidavit, Fed. R. Civ. P. 56(c)(1)(A), 56(c)(4), and the party opposing summary judgment must present evidence demonstrating the existence of a factual dispute. Mere denials are insufficient. *E.g., Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909-10 (8th Cir. 2010). Relatedly, Plaintiff disputes some facts contained in affidavits or depositions by contending that the statements are "self-serving" or not supported by additional evidence in the Record. These responses are also insufficient to create a factual dispute because a party "may not stave off summary judgment armed with only the hope that the jury might disbelieve witnesses' testimony." *Thompson v. Hubbard*, 257 F.3d 896, 899 (8th Cir. 2001) (quotation omitted). Therefore, the Court will not provide citations to the Record for facts that (1) have been agreed to or (2) that have been properly supported and for which Plaintiff has not identified evidence from the Record that would create a factual dispute.

The events in question are depicted on a recording from Officer Collins dashcam. For summary judgment purposes, the Court can accept facts clearly depicted on the video as

conclusively established, even if somebody has offered a sworn statement that contradicts those facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Eighth Circuit has applied *Scott* to hold that a district court need not treat a fact as disputed when the fact is conclusively established by video evidence. *E.g., Boude v. City of Raymore,* 855 F.3d 930, 933 (8th Cir. 2017); *Coker v. Arkansas State Police,* 734 F.3d 838, 841 (8th Cir. 2013). Therefore, the Court deems facts depicted in the video as conclusively established for purposes of summary judgment.

Finally, the Court addresses each side's expert reports, both of which are the subject of motions to strike. The Court has not ruled on the motions to strike and finds it unnecessary to do so in light of this Order. The parties' reliance on the experts' reports in connection with the Motion for Summary Judgment is limited, and in that context they have been cited primarily to (1) establish factual matters for which expert testimony is unnecessary (e.g., to describe what happened on the videotape) or (2) address legal issues that are not amenable to expert testimony (such as opining whether certain assumed facts constitutionally justified certain actions). The Court has not relied on the experts' reports for these purposes.

### B. The Record, Construed in Plaintiff's Favor

Shortly before 1:00 a.m. on March 6, 2015, Officer Collins was patrolling the area of Independence Avenue in Kansas City, Missouri. This area is known to the police (and Officer Collins specifically) as a having a high incidence of prostitution, drug crimes, robberies, and other crimes. (Doc. 44-1, ¶ 5-6.) As he approached the intersection of Independence Avenue and Garfield Street, Officer Collins saw a Ford Escort in the middle of the southbound lane of

3

Garfield Street, facing north. Near that intersection is a set of stairs that was known to Officer Collins to be a place that people congregate to buy and sell drugs. (Doc. 69-3, p. 7.)[1] The Escort's positioning allowed the driver to be closest to the side of the street where the stairs were located. Officer Collins came to a stop in the intersection and attempted to run the Escort's plates. He was unable to get a response from dispatch, so after approximately twenty-five seconds he turned his vehicle around in the middle of Independence Avenue so he could get behind the Escort on Garfield. (Doc. 44-1, ¶¶ 8-9; Video, 12:54:10 to 12:54:39.) As he did so, the Escort accelerated and went north on Garfield, which caused Officer Collins to believe that the Escort sped off because the driver saw him turning around. (Doc. 44-1, ¶¶ 13-14.) By the time Officer Collins completed his turn onto Garfield the Escort was just disappearing from sight because it turned onto another street. (Video, 12:54:59 to 12:55:02.) Believing it possible that the occupants had been involved in a drug deal or that the car was stolen, (Doc. 44-1, ¶¶ 12, 14; Doc. 69-3, p. 7),[2] Officer Collins followed. The Escort made two more turns, (Video, 12:55:22 to 12:55:26 and 12:55:38 to 12:55:45), before apparently attempting a third, at which point it crashed into a curb. (Video, 12:55:48 to 12:55:52.)

Officer Collins pulled behind the Escort and activated his lights. He then got out of his vehicle to conduct a "car check," which consists of removing a car's occupants because of a concern that the occupants might be armed or dangerous. (Doc. 44-1, ¶¶ 16-17.) He entered the dashcam's view at approximately 12:56:14, and his gun was drawn. Movement can be seen in the Escort, and at approximately 12:56:17 the driver began to open the door. Officer Collins

---

[1] All page numbers are the page numbers generated by the Court's CM/ECF system.

[2] Plaintiff denies that Officer Collins suspected drug activity because the incident report does not list this as a reason for his plan to initiate a traffic stop. (Doc. 70, pp. 7-8.) The Court discerns no contradiction: Officer Collins could (and under the circumstances had reason to) suspect that a drug deal had occurred or was planned even if that suspicion did not rise to a level that permitted him to formally stop Plaintiff. And, these facts (e.g., where he was and what he saw) are still relevant in determining the reasonableness of Officer Collins' actions.

instructed the driver (Plaintiff) to turn off the car at the same time the driver's door opened. He repeated the command three times as he advanced to the Escort's door, with his gun pointed toward Plaintiff. (Video, 12:56:17 to 12:56:23.) Plaintiff did not turn off the car and instead questioned why Officer Collins had his gun out. Officer Collins approached the driver's compartment and reached in with his right hand; his gun was in his left hand. The passenger turned off the car, and Officer Collins holstered his gun. Officer Collins' gun never entered the driver's compartment, and Plaintiff had not exited the car. (Video, 12:56:24 to 12:56:30; Doc. 44-1, ¶ 23.)

A conversation ensued, and at 12:56:48 Plaintiff (or the passenger, or both) gave Officer Collins his ID or wallet, which Officer Collins put on top of the car at 12:56:51. At 12:56:53 Officer Collins told Plaintiff to stop moving his hands, but Plaintiff did not comply. At 12:57:00 Officer Collins grabbed and pulled Plaintiff's arm and told Plaintiff to get out of the car, but Plaintiff held onto the steering wheel with his other hand so Officer Collins could not remove him. For approximately a minute Officer Collins continued trying to remove Plaintiff from the car, and Plaintiff stated several times that he would get out of the car if Officer Collins let go of him and allowed him to exit on his own accord. (Video, 12:57:00 to 12:58:05.) At 12:58:09, Officer Collins let go of Plaintiff's arm; Plaintiff nonetheless remained in the car and insisted he would not get out because Officer Collins would not tell him why he had to get out. At 12:58:43, Officer Collins again tried to remove Plaintiff from the car, but he let go three seconds later. From 12:58:46 until 12:59:51, Officer Collins continued directing Plaintiff to exit the car and Plaintiff continued his refusal to do so; during this time, Officer Collins did not touch Plaintiff. At 12:59:51 Officer Collins tried again to remove Plaintiff from the car. This time, he was able to grab Plaintiff by the back of his belt, remove him from the car, raise him in the air,

5

"and use the ground stun technique to lay him out on the ground in a prone position." (Doc. 44-1, ¶ 29; Video, 12:59:55 to 1:000:01.) For approximately a minute Officer Collins stayed on top of Plaintiff, trying to control him. Two more officers arrived at 1:01:13 and went to secure the passenger. More officers arrived at 1:01:24 and eventually took control of Plaintiff; Officer Collins last touched Plaintiff at 1:01:32.

Plaintiff's operative pleading is his Amended Complaint. (Doc. 22.) In Count I, he alleges that Officer Collins and John Does 1-6 utilized excessive force in violation of the Constitution. Count II alleges that Officer Collins and John Does 1-6 violated Plaintiff's constitutional right to bodily integrity. Count III asserts that the Board of Police Commissioners ("the Board") is liable for the constitutional violations alleged in Counts I and II because those violations are attributable to an official policy, an unofficial custom, or a failure to train or supervise. Count IV advances a claim for negligence against all Defendants. Count V does not state an independent cause of action but only requests an award of punitive damages against all Defendants.

Defendants present various arguments in favor of summary judgment, which Plaintiff opposes. The Court resolves the parties' arguments below.

## II. DISCUSSION

A moving party is entitled to summary judgment on a claim only upon a showing that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985). A party opposing a motion for summary judgment may not simply deny the allegations, but must point to evidence in the Record demonstrating the existence of a factual dispute. Fed. R. Civ. P. 56(c)(1); *Conseco Life Ins. Co.*, 620 F.3d at 909-10.

### A.  Count I – Excessive Force

Officer Collins contends that he is entitled to qualified immunity on Plaintiff's claim of excessive force. "Qualified immunity involves the following two-step inquiry: (1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Mitchell v. Shearrer*, 729 F.3d 1070, 1074 (8th Cir. 2013). The Court has the discretion to decide which prong to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A claim of excessive force is evaluated under the Fourth Amendment, *Graham v. Connor*, 490 U.S. 386, 394 (1989), and the reasonableness of the amount of force employed is judged from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight, giving due regard to an officer's need to make split-second decisions based on evolving circumstances at the scene. *E.g.*, *Graham*, 490 U.S. at 396-97; *Estate of Morgan v. Cook*, 686 F.3d 494, 497 (8th Cir. 2012).

7

Plaintiff claims two "uses of force" violated his constitutional rights: (1) pointing a gun at him and (2) pulling him from his car and slamming him to the ground. The Court examines these issues separately.

### *1. Pointing a Gun*

The Court begins, as required by *Graham* and other cases establishing the standard for excessive force, by considering the undisputed facts establishing the circumstances facing the officer. Officer Collins saw Plaintiff's car running and facing North in the southbound lane of a side street. The street is in an area generally known as a high-crime area, and the car was situated in a manner that placed the driver's side next to a sidewalk that led directly to a location where people engaged in drug transactions were known to frequent. Officer Collins stopped in the intersection for twenty-five seconds before turning to get behind the car, at which point the car sped away. The fact that Plaintiff denies exceeding the speed limit is of no consequence: the undisputed circumstances were sufficient to arouse a reasonable officer's suspicions. Officer Collins followed Plaintiff until Plaintiff collided with a curb. Officer Collins exited with his gun pointed in the direction of the car. The passenger door was flung open with the car still running. At that point Officer Collins advanced with the gun pointed at Plaintiff and directed him to turn off the car – which Plaintiff never did. Once the passenger turned off the car, Officer Collins holstered his gun.

The Court holds that even if this constituted force, its use was reasonable. Assessing whether Officer Collins acted with objective unreasonableness requires consideration of "the facts and circumstances of [the] case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. Here,

8

Officer Collins knew that Plaintiff's car was idling strangely in an area where drug deals were consummated. He circled to follow the car, and it was at that point that Plaintiff accelerated to leave the scene. Plaintiff's car crashed, but remained running. These facts justified a concern for Officer Collins' safety, particularly because (1) he could not clearly see the car's occupants and (2) he could not be certain the car was inoperable. Those concerns were compounded by Plaintiff's failure to turn off the car, and were not allayed until Officer Collins came closer. Once the car was turned off and Officer Collins could see that the occupants were unarmed, he holstered his weapon.

Plaintiff compares this case to the Ninth Circuit's decision in *Robinson v. Solano County,* but that case is factually distinguishable.[3] The plaintiff used a shotgun to kill two dogs that were attacking his livestock and the dogs' owner called the police. The police approached the plaintiff; by this time the plaintiff was unarmed. Plaintiff alleged (and the Court accepted for purposes of discussion) that Plaintiff was calm. The officers nonetheless drew their guns, pointed them at the plaintiff's head and ordered him to put his hands on his head. 278 F.3d 1007, 1010-11 (9th Cir. 2002) (en banc). The Ninth Circuit held that "that pointing a gun to the head of an apparently unarmed suspect during an investigation *can be* a violation of the Fourth Amendment, especially where the individual poses no particular danger." *Id.* at 1015 (emphasis supplied). In discussing why force was not justified in that particular case, the Ninth Circuit explained that "[t]he crime under investigation was at most a misdemeanor; the suspect was apparently unarmed and approaching the officers in a peaceful way. There were no dangerous or exigent circumstances apparent at the time of the detention, and the officers outnumbered the

---

[3] Plaintiff also finds support in the Ninth Circuit's decision in *United States v. Del Vizo*, but the comparison is inapt. *Del Vizo* was a criminal case; the issue addressed was a suppression motion, predicated on the defendant's theory that he had been arrested without probable cause. 918 F.2d 821, 822 (9th Cir. 1990). The Ninth Circuit held that the defendant had been arrested, but that there was probable cause to do so. *Id.* at 825-27. *Del Vizo* does not discuss whether excessive force was employed in the course of the arrest.

plaintiff." *Id.* at 1014. The circumstances of this case are different in several respects: Officer Collins was alone and outnumbered, the events occurred in a high-crime area, Plaintiff had acted in a manner consistent with criminal activity, Officer Collins had a legitimate concern for his safety, and Officer Collins' gun was out only until he could confirm that Plaintiff and his passenger were unarmed and the car's engine was turned off. Giving due regard to these circumstances, as well as the need to "allow[ ] for the fact that police officers are often forced to make split-second judgments about the amount of force that is necessary in a particular situation, *Johnson v. Carroll,* 658 F.3d 819, 826 (8th Cir. 2011), the Court concludes that the force involved in pointing a gun at Plaintiff was constitutional.

For these reasons, the Court concludes Plaintiff's rights were not violated when Officer Collins pointed his gun at him. This conclusion makes it unnecessary to consider whether the right Plaintiff asserts was clearly established.

### 2. Removal From the Car

Plaintiff treats the events involving his removal from the car as a single incident to argue that no force was justified because he was not told to exit his car and he said he would get out. The dashcam reveals a series of events that contradicts Plaintiff's characterization of events, undermines his legal analysis, and demonstrates that Officer Collins did not violate Plaintiff's rights by utilizing excessive force.

The Court starts by addressing Plaintiff's suggestion that Officer Collins was not justified in ordering him to get out of the car. Considering the situation in its entirety, Officer Collins had reasonable suspicion that criminal activity had occurred, and he was entitled to stop Plaintiff and order him out of the car. *United States v. Robinson,* 670 F.3d 874, 876 (8th Cir. 2012); *see also United States v. Arvizu,* 534 U.S. 266, 274 (2002) ("The [lower] court's evaluation and rejection

of seven of the listed factors in isolation from each other does not take into account the 'totality of the circumstances,' as our cases have understood that phrase."). "Once reasonable suspicion is established, law enforcement officers may conduct a protective search of a vehicle's interior, whether or not the occupants have been removed from the vehicle, because "if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *United States v. Morgan,* 729 F.3d 1086, 1089-90 (8th Cir. 2013). And, of course, Officer Collins was constitutionally permitted to take reasonable steps to insure his protection during this process.

Officer Collins first touched Plaintiff at 12:57:00, after Plaintiff disobeyed an order to stop moving his hands. At this point, while Plaintiff did not have a weapon in his hands, Officer Collins did not know whether there was a weapon in the car – so his instruction that Plaintiff sit still was reasonable, and when it was disobeyed Officer Collins acted reasonably in restraining Plaintiff's use of his hands. Within two seconds, Officer Collins told Plaintiff to get out of the car. Thus, while it is true that Officer Collins did not tell Plaintiff to get out of the car before initially grabbing his arm at 12:57:00, the use of force employed in the two seconds before the order was given was reasonable under the circumstances.

Thereafter, Officer Collins maintained his hold on Plaintiff for approximately a minute and told Plaintiff to get out of the car, but Plaintiff did not do so.[4] Occasionally, Officer Collins tried to pull Plaintiff out of the car. Safety concerns justified the instruction to exit the car: Officer Collins was alone in a high-crime area, was dealing with two occupants who may have been involved in wrongdoing, and he had no means of insuring there were no weapons in the car

---

[4] Plaintiff emphasizes his promise to exit the car if Officer Collins let go of him, but (1) Plaintiff does not explain how his attempt to dictate the conditions under which he would comply affects the Constitutional analysis, and (2) Plaintiff did not get out of the car even after Officer Collins let go of Plaintiff's arm.

11

without removing the occupants. In addition, Plaintiff had crashed the Escort and disobeyed instructions to keep his hands still. When the instruction to exit the car was disobeyed – even passively – Officer Collins was justified in utilizing force to extract Plaintiff from the car. *E.g., Boude,* 855 F.3d at 933; *Wertish v. Krueger,* 433 F.3d 1062, 1066-67 (8th Cir. 2006); *Janis v. Biesheuvel,* 428 F.3d 795, 800 (8th Cir. 2005). Officer Collins then released Plaintiff and for over a minute Plaintiff's intransigence continued. Officer Collins tried again to remove Plaintiff; this time, he was successful, and the fact that Plaintiff was "slammed" to the ground does not render the use of force unreasonable. *E.g., Wertish,* 433 F.3d at 1066-67.

For these reasons, Plaintiff's right to be free of excessive force was not violated by Officer Collins' efforts to remove him from the car. There being no Constitutional violation, there is no need for the Court to determine whether the right Plaintiff posits was clearly established.

### B. Count II – Violation of Right to Bodily Integrity

Count II of the Amended Complaint relies on the same facts supporting Count I to allege violations of what Plaintiff describes as his Fourth and Fourteenth Amendment rights to bodily integrity. Defendants essentially argue that Count II (1) fails to state a claim to the extent that it is premised on the Fourteenth Amendment and (2) redundant (with Count I) to the extent that it is premised on the Fourth Amendment. The Court need not detail these arguments because Plaintiff largely agrees with Defendants. Plaintiff "does not oppose Defendants' request that this Court analyze his Count II . . . pursuant to the Fourth Amendment" and only argues that "his entire claim should not be dismissed merely for additionally referencing the Fourteenth Amendment." (Doc. 70, p. 47.) But, limiting Count II to a Fourth Amendment makes it the

same as Count I. Therefore, summary judgment is granted on Count II for the same reasons discussed in Part II.A.

### C. Count III – Failure to Instruct, Supervise, Control or Discipline

The Board argues its liability on Count III is derivative of Officer Collins' liability, and it is entitled to judgment if Officer Collins is granted summary judgment on Counts I and II. Plaintiff does not dispute this point, and the Court agrees with the Board's analysis. "This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *McCoy v. City of Monticello,* 411 F.3d 920, 922 (8th Cir. 2005). Officer Collins is not liable for violating Plaintiff's constitutional rights, so the Board is entitled to summary judgment on Count III with respect to Officer Collins' actions.

### D. Counts IV – Negligence

Count IV alleges that the Board was negligent in its training and supervision of Officer Collins, and that Officer Collins was negligent in his use of force and in "escalating the use of force without trying lesser means of restraint and without adequate provocation." (Doc. 22, ¶ 63.) Defendants argue they are entitled to sovereign immunity.[5] The Court agrees that the Board is entitled to sovereign immunity, but does not agree that Officer Collins is entitled to sovereign immunity.

#### *1. The Board*

The Board contends that sovereign immunity bars Plaintiff's claims of negligence. Plaintiff does not address this issue, and the Court agrees that sovereign immunity bars Plaintiff's negligence claims against the Board.

---

[5] Defendants also argue that Plaintiff has pleaded only intentional conduct and has not pleaded negligence. (Doc. 44, pp. 12-13.) For the reasons stated in the text, the Court declines to reach this issue.

13

Under Missouri law, sovereign immunity protects the Board from tort claims. *E.g., Holmes v. Kansas City, MO Bd. of Police Comm'rs,* 364 S.W.3d 615, 625 (Mo. Ct. App. 2012); *Fantasma v. Kansas City, MO Bd. of Police Comm'rs,* 913 S.W.2d 388, 391 (Mo. Ct. App. 1996). The only exceptions to that immunity are for injuries (1) arising from an employee's negligent operation of a motor vehicle in the course of his employment, (2) caused by a dangerous condition on property, (3) caused by the performance of a proprietary (and not governmental) function, and (4) that are covered by insurance procured by the governmental entity. *Bennartz v. City of Columbia,* 300 S.W.3d 251, 259 (Mo. Ct. App. 2009). None of these circumstances are alleged to exist in this case. Therefore, the Court concludes the Board's sovereign immunity protects it from Plaintiff's tort claims, and summary judgment is appropriate.

### *2. Officer Collins*

Officer Collins also alleges that he is protected by sovereign immunity. (Doc. 44, p. 13.) Under Missouri law, sovereign immunity bars claims asserted against individuals in their official capacities, because such suits are regarded as being directed to the governmental entity. *B.A.B., Jr. v. Board of Educ. of City of St. Louis,* 698 F.3d 1037, 1041 (8th Cir. 2012). Plaintiff points out that Officer Collins is sued in both his official and his individual capacity, (Doc. 70, pp. 51-52; *see also* Doc. 22, p. 1), and sovereign immunity does not apply to individual-capacity claims. Defendants' Reply Suggestions do not address Plaintiff's response.

The Court agrees that Officer Collins has been sued in his individual capacity, so the Court cannot grant him summary judgment based on sovereign immunity. Nonetheless, Officer Collins may be entitled to official immunity. "Under Missouri law, official immunity 'protects public employees from liability for alleged acts of negligence committed during the course of

14

their official duties for the performance of discretionary acts.'" *K.B. v. Waddle*, 764 F.3d 821, 824 (8th Cir. 2014) (quoting *Southers v. City of Farmington,* 263 S.W.3d 603, 610 (Mo. 2008) (en banc)). An "officer's decision to use force in the performance of his duties is discretionary rather than ministerial." *Davis v. White,* 794 F.3d 1008, 1013 (8th Cir. 2015). However, the Court is reluctant to base a decision on official immunity when the issue has not been addressed by the parties.

Given that trial is set for July 31, 2017, Defendants shall have until 5:00 p.m. on June 9, 2017, to address whether Officer Collins is entitled to official immunity. Plaintiff shall have one week to respond, and Defendants shall have one week to file a reply. In the meantime, the filing requirements set forth in the Court's Scheduling and Trial Order, (Doc. 8), are suspended and will be reestablished at a later time if necessary.

### **E. Count V**

Count V only seeks punitive damages. Count V is therefore resolved to the extent that the Court has granted summary judgment or (as discussed below) the John Doe Defendants are dismissed.

### **F. The John Doe Defendants and Related Claims Against the Board**

Plaintiff has not named or served the John Doe Defendants, so they are dismissed.[6] However, the parties have not addressed the claims against the Board in Count III to the extent those claims arise from the John Doe Defendants' alleged conduct. While the absence of the John Doe Defendants precludes any determination of their personal liability, it is not clear whether the Court must evaluate whether they violated Plaintiff's constitutional rights to

---

[6] In requesting permission to file an Amended Complaint on November 27, 2016 to add the John Doe Defendants, Plaintiff acknowledged that he would need to "seek further leave to amend his Complaint once he determines the true identify of these Defendants through additional discovery." (Doc. 19, ¶ 6.) Plaintiff made no further requests to amend.

15

determine the Board's derivative liability in Count III.  The parties shall address this issue in the same filings in which they discuss Officer Collins' entitlement to official immunity.

### III.  CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment is **GRANTED IN PART.**  The motion is **GRANTED** with respect to (1) Counts I and II in their entirety, to the extent they assert claims against Officer Collins, and (2) Count III, IV and V to the extent those counts assert claims against the Board based on Officer Collins' actions.  The John Doe Defendants are **DISMISSED.**  Officer Collins and the Board shall submit supplemental briefing as described in Parts II.D.2 and II.F.

**IT IS SO ORDERED.**

DATE:  June 2, 2017

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT